[Civ. No. 3263.    Third Appellate District.—May 17, 1927.]

## NUMITOR GOLD MINING COMPANY (a Corporation), Respondent, v. STEPHEN M. KATZER et al., Appellants.

[1] TAXATION—TAX SALES—CHARACTER OF PROCEEDINGS—DEEDS.—Proceedings on tax sales are *in invitum,* and every essential step leading to the execution of a tax deed must be strictly followed, or the deed executed pursuant thereto will be void.

[2] ID.—DELINQUENT TAXES—NOTICE OF SALE—DESCRIPTION OF PROPERTY.—A description of property noticed for sale for delinquent taxes as follows: "Portion E. of Greenhorn Creek of E½ of SW¼ of NE¼ of Sec. 15, Twp. 15 N., R. 9 E., Mt. D. B. & M., cont. 5 acres," is not uncertain, as it clearly includes *all* that portion of the specifically described land lying east of Greenhorn Creek, which portion consists of five acres.

[3] ID.—DESCRIPTION—SUFFICIENCY OF.—The following description of property noticed for sale for delinquent taxes is sufficient, to wit: "Portion E. of Greenhorn Creek of E½ of E½ of Sec. 15 Twp. 15 N., R. 9 E., Mt. D. B. & M., containing 80 acres."

[4] ID.—CERTAINTY OF DESCRIPTION.—A description of property noticed for sale for delinquent taxes as follows: "SW¼ (except part in Bear River) and S½ of S½ of NW¼ of Sec. 14, Twp. 15 N., R. 9 E., Mt. D. B. & M., containing 180 acres," is not uncertain.

[5] ID.—IDENTIFICATION OF PROPERTY—DESCRIPTION.—While it is true that a description of land for the purposes of taxation must be certain, yet the description is *prima facie* sufficient if the land can be readily identified and located so as not to mislead the owner.

[6] ID.—TIME AND PLACE OF SALE—DEFECTIVE NOTICE.—A notice of sale of property for delinquent taxes, the caption to which read, "Property to be sold at public auction on June 27, 1923, for delinquent taxes of 1918," and the body of which read that the tax collector "will be on the 27th day of June, 1922, at 10 o'clock A. M. of said day, and continuing each day thereafter, if additional time is required to complete the sale in the Tax Collector's office," and "will sell at public auction to the highest bidder for cash in lawful money of the United States, the several parcels and lots of property hereinafter described," is fatally defective, as it states neither the time nor the place of sale.

1.   See 24 Cal. Jur. 324; 26 R. C. L. 394.
5.   See 26 R. C. L. 407.

[7] Id.—Time of Sale—Notice—Jurisdiction.—The notice of the sale is statutory and jurisdictional and the court may not speculate as to the actual date intended to have been inserted.

[8] Id.—Notice of Sale—Service by Mail—Jurisdiction—Return of Notice Prior to Sale—Void Deed—Postal Regulations.—The service of a notice of sale of property for delinquent taxes by mail is jurisdictional, and where it is returned prior to the sale without having been delivered, it is an insufficient service of notice, and a deed executed pursuant to such a defective notice is void; nor is such jurisdictional prerequisite waived by virtue of the reason that the United States postal rules, in the absence of instructions from the sender to the contrary, require the return of the parcel prior to the expiration of twenty-one days required by section 3771a of the Political Code.

[9] Id.—Postal Regulations—Construction—Section 3771a, Political Code.—Section 956 of the United States Postal Laws, as amended in 1918, implies that the sender of registered mail may request the retaining of the parcel at its destination not to exceed ninety days; and the postal rules are not in conflict with section 3771a of the Political Code respecting the service by mail of notice of proposed tax sales.

[10] Id.—Void Tax Deed—Right of Holder to Reimbursement for Improvements or Betterments—Quieting Title—Termination of Right of Way—Expense of Litigation—Evidence.—Under subdivision 5 of section 3898 of the Political Code, an owner of property is not liable for the value of improvements or betterments placed upon the property by the holder of a void tax deed; and in an action to quiet title to real property and to declare defendants' tax deed void on account of a defective notice of sale, the latter are not entitled to be reimbursed by the plaintiff for having instituted litigation to terminate a right of way across the property in question, without any showing that such litigation was likely to terminate favorably to the defendants, or that if it terminated successfully for the defendants the value of the premises would be enhanced.

(1) 37 Cyc., p. 1479, n. 88.    (2) 37 Cyc., p. 1329, n. 45.    (5) 37 Cyc., p. 1053, n. 15.    (6) 37 Cyc., p. 1328, n. 40, 41.    (7) 37 Cyc., p. 1327, n. 32.    (8) 37 Cyc., p. 1326, n. 21.    (10) 37 Cyc., p. 1541, n. 32, 33.

8.  See 24 Cal. Jur. 346; 26 R. C. L. 409.
10.  Right of one purchasing under invalid tax deed to be reimbursed for improvements, notes, 81 Am. St. Rep. 190; 34 L. R. A. (N. S.) 549.  See, also, 26 R. C. L. 439, 441; 14 R. C. L. 18, 19.

APPEAL from a judgment of the Superior Court of Nevada County. George L. Jones, Judge. Affirmed.

The facts are stated in the opinion of the court.

Gerald R. Johnson and Thomas Ashby for Appellants.

J. M. Walling for Respondent.

THOMPSON (R. L.), J., *pro tem.*—This is an appeal from a judgment quieting plaintiff's title to real property, and declaring defendants' tax deed void on account of a defective notice of sale.

The defendants assert that the notice of sale was a sufficient compliance with the statute, and charge the trial court with error in the exclusion of evidence of the cost of improvements which they claim to have incurred, and which should have been allowed as a prerequisite to the granting of the decree.

Plaintiff was the owner of six tracts of land situated in Nevada County, California, aggregating 161 acres of land, which were sold to the state June 25, 1918, for delinquent taxes. On June 4, 1923, pursuant to section 3764 of the Political Code, the tax collector published notice of the sale of these lands in "The Morning Union," a newspaper of Grass Valley, which notice in part read:

"Addenda Notice.

"Property to be Sold at Public Auction on June 27, 1923, for Delinquent Taxes of 1918.

"Public notice is hereby given that the five-year period allowed by law for the redemption of property sold to the State for delinquent taxes will have expired on the 25th day of June, 1923, on all of the property sold to the state for delinquent taxes in the year 1918, as herein listed (unless redeemed or cancelled on or before the date of sale), and that pursuant to the provisions of Section 3771a of the Political Code, I, Wm. T. Garland, as County Tax Collector of the County of Nevada, will be on the 27th day of June, 1922, at 10 o'clock A. M. of said day, and continuing each day thereafter, if additional time is required to complete the sale, in the Tax Collector's office in the Court House in the County of Nevada, State of California, the undersigned

Tax Collector will sell at public auction to the highest bidder for cash in lawful money of the United States, the several parcels and lots of property hereinafter described. . . . ''

On June 27, 1923, the land in question was sold to defendants in consideration of the payment of the accrued delinquent taxes and costs, and two days later a deed of conveyance was executed and delivered to them. The validity of the deed is challenged for the following alleged irregularities in the tax sale proceedings, to wit: inaccurate description of the separate parcels of land, and defective notice of sale.

[1] The rule is firmly established that the proceedings on tax sales are *in invitum*, and that every essential step leading to the execution of a tax deed must be strictly followed, or the deed executed pursuant thereto will be void. (24 Cal. Jur. 324, sec. 296; *Russell* v. *Mann*, 22 Cal. 131; *Lachman* v. *Clark*, 14 Cal. 131; *Kelsy* v. *Abbott*, 13 Cal. 609; *Lewis* v. *Tulare Rec. Dist. No. 749*, 56 Cal. App. 52 [204 Pac. 421]; *Holland* v. *Hotchkiss*, 162 Cal. 366 [L. R. A. 1915C, 492, 123 Pac. 258].)

The statute requires the notice of sale to specify the time, place, and description of the property to be sold. "Such notice shall state the day and hour and place of sale . . . " (Pol. Code, sec. 3764.)

[2] The following descriptions of land were challenged as insufficient: "Portion E. of Greenhorn Creek of E½ of SW¼ of NE¼ of Sec. 15, Twp. 15 N., R. 9 E., Mt. D. B. & M., cont. 5 acres." This description clearly includes *all* that portion of the specifically described land lying east of Greenhorn Creek, which portion consists of five acres, and is not uncertain.

[3] For the same reason the following description is sufficient, to wit: "Portion E. of Greenhorn Creek of E½ of E½ of Sec. 15, Twp. 15 N., R. 9 E., Mt. D. B. & M., containing 80 acres."

[4] Nor is the following description uncertain: the "SW¼ (except part in Bear River) and S½ of S½ of NW¼ of Sec. 14, Twp. 15 N., R. 9 E., Mt. D. B. & M., containing 180 acres." This description includes 200 acres of land, except the portion thereof contained within the boundaries of the river which evidently flows through this tract,

and which excluded portion by elimination consists of twenty acres of land. There can be no doubt as to the land described, nor as to the portion thereof which is excepted from the levy.

[5] While it is true that a description of land for the purposes of taxation must be certain, yet the description is *prima facie* sufficient if the land can be readily identified and located so as not to mislead the owner. (Black on Tax Titles, p. 139, sec. 112; 3 Cooley on Taxation, p. 2363, sec. 1175; *Corson* v. *Crocker*, 31 Cal. App. 626 [161 Pac. 287].)

[6] Strictly construed, the notice which was published in this case stated neither the time nor the place of sale. An error also occurred in the date of sale. We are of the opinion that this notice was, therefore, fatally defective.

The caption to the addenda which reads, "Property to be sold at public auction on June 27, 1923, for delinquent taxes of 1918," is not a definite statement that the property would, in fact, be sold on that date. Moreover, if it can be said to be an affirmative statement that the property would be sold on June 27, 1923, it is in direct conflict with the following language employed in the body of the notice: "I, Wm. T. Garland, as County Tax Collector of the County of Nevada, *will be* on the 27th day of June, 1922, at 10 o'clock A. M. of said day, and continuing each day thereafter, if additional time is required to complete the sale, *in the Tax Collector's office . . .* " Evidently a clerical error occurred in inserting in this notice the year "1922" instead of 1923. Of course the figures "1922" indicated an impossible date of sale, since at the time of the publication that date had already elapsed. Nor can it be held that reference to the caption of a notice can be resorted to to correct and actually change an erroneous date contained in the body of the instrument. [7] The notice of the time of sale is statutory and jurisdictional, and the court may not speculate as to the actual date intended to have been inserted. (*Lewis* v. *Tulare Rec. Dist.*, 56 Cal. App. 52 [204 Pac. 421]; *Simmons* v. *McCarty*, 118 Cal. 622 [50 Pac. 761].) In Black on Tax Titles, section 207, it is said: "It [the notice] must designate the time and place of the sale with such certainty that there can be no reasonable misconception in regard to it." (3 Cooley on Taxation, 4th ed., p. 2804, sec. 1415; *Knowlton* v. *Moore*, 136 Mass. 32.)

A strict construction of the language employed in this notice impels the conclusion that there was an omission to state that the property would actually be sold, even upon that inaccurate date of 1922, for the language is: "I, Wm. T. Garland, as County Tax Collector . . . will be . . . in the Tax Collector's office," on "June 27, 1922, . . . and continuing each day thereafter," etc., and "will sell at public auction . . . the several parcels and lots of property hereinafter described . . . " This language construed strictly according to the rule invoked means that Wm. T. Garland, county tax collector, gave notice that he would be in his office June 27, 1922, and continuing thereafter, and would sell the property in question, without stating when or where he· would dispose of it.

In addition to the publication of notice of sale, the tax collector is required by the provisions of section 3771a to send by registered mail a copy of the notice to the last known address of the party to whom the land was last assessed. This notice must be mailed within five days of the first publication and at least twenty-one days before the date of sale. The purpose of this mailing of notice is to afford personal service upon the owner if reasonably possible, and enable him to redeem the property. A copy of this printed notice, with the inaccurate date of "1922" first changed to 1923, in the copy, was on June 4, 1923, forwarded by registered mail to the plaintiff's last known address at Chicago, Illinois. The wrapper of this parcel contained printed instructions to return the parcel to the sender within ten days, if not claimed. It was thereafter returned unclaimed before the date upon which the sale was made.

[8] The service of this notice by mail is also jurisdictional, and where it is returned prior to the sale without having been delivered, it is an insufficient service of notice, and a deed executed pursuant to such a defective notice is void. The purpose of the statute in requiring this notice to be sent to the owner twenty-one days before the sale is that he may be thereby given a reasonable opportunity of obtaining personal notice of the sale. If the notice remains in the postoffice up to the time of sale, there is always a possibility that the owner may claim his mail, and thus obtain knowledge of the proposed sale. If it is withdrawn

and returned before the sale, this opportunity may be defeated. (24 Cal. Jur. 346, secs. 323, 329; *Healton* v. *Morrison,* 162 Cal. 668 [124 Pac. 240]; *Joslin* v. *Shaffer,* 66 Cal. App. 69 [225 Pac. 307].) Nor is this jurisdictional prerequisite waived, by virtue of the reason that the United States postal rules, in the absence of instructions from the sender to the contrary, require the return of the parcel prior to the expiration of the twenty-one days required by the statute. Section 956 of the United States Postal Laws, as amended in 1918, provides: "Domestic registered letters and parcels which remain undelivered for the period stated in paragraph 1 of section 633, *or such period as may be named in the sender's return request,* if any, *not less than three nor more than ninety days,* shall be marked on the face with the reason for non-delivery, and be disposed of as herein provided."

[9] This postal rule clearly implies that a sender of registered mail may request the retaining of the parcel at its destination not to exceed ninety days. The postal rules are therefore not in conflict with the California statute respecting the service by mail of notice of proposed tax sales. The failure of the tax collector to request the holding of the parcel at Chicago for the required twenty-one days, and his inadvertence in placing upon the wrapper the request to return it if unclaimed within ten days, was no doubt the cause of the premature return of the notice. Whatever may have been the cause, the statute was not fulfilled, and the notice of mailing was therefore defective and inadequate.

The defendants offered to prove that, subsequent to acquiring their title, they expended the sum of $1,000 prosecuting a suit to terminate a right of way over the property in question, which right of way had been conveyed by the Nevada County Narrow Gauge Railroad Company, a former owner thereof, to one Nolan by deed dated September 19, 1911, and recorded July 10, 1923. It was claimed that this expenditure was in the nature of betterments or improvements to the property and resulted in enhancing the value thereof. Pursuant to this theory the deed was offered in evidence and was rejected as incompetent on the ground that the statute does not contemplate repayment for improvements or betterments.

**[10]** Subdivision 5 of section 3898 of the Political Code provides that in an action at law, before a conveyance of real property made upon a sale for delinquent taxes can be set aside as void, the holder of such deed must first be repaid "the full amount of taxes, penalties and costs paid out and expended by him . . ."

This statutory provision appears to embrace all classes of expenditures, the repayment of which the legislature intended to make a prerequisite to the entry of a decree declaring a tax deed void on account of irregularities, and it does not pretend to include expenditures for betterments or improvements. Nor can the term "costs" as it is used in this section be construed to include improvements. Evidently the legislature, in the use of this term, was considering only the costs which might be incurred on the sale of the property for delinquent taxes.

The case of *Holland* v. *Hotchkiss,* 162 Cal. 366 [L. R. A. 1915C, 492, 132 Pac. 258], upon which appellant relies, and which contains some language favorable to his contention, involved nothing but a question as to whether the tax deed holder was entitled to *interest* on the sum of $327 paid by him for the purchase of the tax title. This case was decided in 1912, before there was any California statute requiring the tax deed holder to be reimbursed for the money expended by him for the purchase of his tax title. It seems a significant fact that, apparently in response to this very decision, the legislature, the following year of 1913, amended section 3898 of the Political Code, and specifically enumerated just what character of expenditures must be refunded in case of a void tax deed. It would require the exercise of a vivid imagination to read into this statute the requirement to compensate for improvements, and this omission raises almost a conclusive presumption that the legislature intended to absolve the owner from this liability.

The general rule of law, in the absence of statute, does not hold the owner liable for the cost of improvements, where the tax deed is void. In 3 Thompson on Real Property, page 933, section 2777, it is said: "The rule of *caveat emptor* applies with great strictness to a purchaser at a tax sale; and if he fails to secure a good title to the property he attempts to purchase, because of the invalidity of the tax sale, he cannot recover the amount paid therefor, unless

some statute expressly provides some such remedy. The purchaser at such sale usually buys at a nominal price, and assumes the liability of having his title prove to be worthless. If he gets nothing by his purchase, he has, in the absence of a statutory provision, no recourse upon anyone. The statutes in some states . . . provide that the party seeking to have the sale set aside must reimburse the purchaser to the extent of the taxes legally assessed, with costs of the sale and interest. The effect of such a statute is to modify the rule of *caveat emptor* as applied to such sales . . . So the extent of the purchaser's title in a particular case depends on the statute under which the sale is made." (3 Devlin on Deeds, 3d ed., sec. 1349.)

In Black on Taxes, second edition, page 592, section 463, it is said: "If the tax sale is absolutely void, the payment of the tax by the purchaser stands on the footing of a voluntary payment, not made at the request of the owner of the land, and which a court of equity will not require him to refund." (*Harper* v. *Rowe*, 53 Cal. 233.)

The texts relied upon by appellant either declare a limited and conditional requirement on the part of the owner to recompense the disseized tax deed holder for improvements, or bases this necessity upon the existence of a definite statute to that effect.

In 4 Cooley on Taxation, fourth edition, page 3058, section 1557, the author says: "If the holder of a tax title goes into possession and in good faith makes improvements, he is ordinarily entitled to compensation for such improvements on the owner's recovering the property, so far as such value exceeds rental value. It is generally required that the defeated tax-purchaser account for rents and profits received by him.

"A common statutory provision is that the owner of the original title, in the event of his establishing the title to the land, shall pay to the tax purchaser the enhanced value of the land in consequence of the expenditures the latter has made upon it. The requirement that payment shall be made of the fair value of betterments which an adverse claimant has made in good faith upon the land, and which the party making them must now lose, is one that under ordinary circumstances, is eminently just and proper."

"No serious question of the right of the legislature to make such requirements can well arise. The requirement is at this time very generally made, either by statutes especially applicable only to tax sales, or by general 'occupying claimant' statutes applicable to tax sales as well as other sales, but no recovery for improvements is possible where the statute providing therefor has not been complied with, nor where the purchaser has entered into possession in violation of a statute."

In 26 R. C. L., page 441, section 397, it is said: "In many of the states the remedy for improvements made in good faith by persons in possession under color of title has been established by statute and the rule of the common law . . . has been (thereby) greatly extended."

Likewise the same text-writer, in 26 R. C. L., page 439, section 395, says: "When an owner's land has been sold for taxes under an invalid sale, and he comes into a court of equity and asks for a decree setting aside the sale and quieting the title . . . he should be required to reimburse the person who purchased the land at the tax sale for so much of the purchase price as was applicable to the payment of the tax, as a condition precedent to relief on the general principle that 'he who seeks equity must do equity.' In many states the foregoing principle is established by statute, and in but a few states is it now the law that the doctrine of *caveat emptor* will be extended so far as to enable the owner to obtain relief in equity against an invalid sale without reimbursing the purchaser to the amount of the taxes of which the owner has been relieved."

Some confusion exists among the authorities as to the liability of an owner of land to recompense the holder of an invalid tax deed for the value of improvements placed upon the premises upon the good faith of his tax title. There is a sharp conflict between the doctrine of *caveat emptor* which applies to the purchaser of a tax title and the maxim that "he who seeks equity, must do equity," applying to an owner who seeks to quiet title against an invalid tax deed. Many states have enacted statutes, termed betterment laws, which are intended to recognize the equities and enable a *bona fide* holder of a tax title to recover the enhanced value of property, on account of improvements placed by the purchaser upon premises in good faith. (26 R. C. L.,

p. 441, sec. 397; 14 R. C. L., p. 19, sec. 7; 31 C. J., p. 315, sec. 18.) In a few states, independent of such betterment statutes, it has been held that where an owner brings his action in equity for an accounting for rents and profits, or to quiet title against a tax deed held by a *bona fide* holder, the owner must recompense such holder for the value of improvements. (31 C. J., p. 314, sec. 16; 14 R. C. L., p. 18, sec. 6.) Most cases confine this doctrine to actions in equity instituted by the owner, and do not extend it to cases where the tax holder is the actor in the litigation. (31 C. J., p. 314, secs. 16, 17.) And in many cases it has been held that the value of improvements may be recouped by the tax deed holder, only as an offset, when the owner has sought for an accounting for rents and profits. "It has been held that if no claim is made for rents and profits, no allowance can be made for improvements." (31 C. J., p. 314, sec. 16; *Green* v. *Biddle,* 8 Wheat. (U. S.) 1 [5 L. Ed. 547, see, also, Rose's U. S. Notes].) An examination of the authorities indicates that the common-law rule, which precludes the recovery of the value of improvements made by a holder of tax title under a void deed, has been very cautiously extended. Recognizing the far-reaching effect, and the possible irreparable injury to the owner by abandoning the rule of *caveat emptor* with respect to tax titles, the courts have been loath to extend the rule compelling compensation for improvements, in the absence of statutory requirements. The language of the text-writers and of the decisions which supports the doctrine compelling an owner to recompense a tax deed holder for the value of improvements is usually based upon the existence of betterment statutes. And those authorities which have required payments as a pure doctrine of equity independent of statute have usually confined this requirement to the mere repayment of assessments, taxes, penalties, costs, and interest. That is the full extent to which the case of *Holland* v. *Hotchkiss, supra,* can be said to go, for the question of interest on the taxes paid by the purchaser of the title was the sole problem there involved. We have been cited to no case in the California Reports which extends the rule beyond this limit. Indeed, it would seem to be revolutionary and dangerous to do so. For generations the theory of the law has been that the purchaser of a tax title is a mere speculator

who, owing to the misfortune or carelessness of the owner, has become possessed of a desirable property for an infinitesimal proportion of its actual value. In the absence of negligence or laches on the part of the owner, the purchaser, on the doctrine of *caveat emptor*, should improve or radically alter the character of the property *at his peril*, at least until he had remained the undisputed owner for a reasonable length of time. Justice would seem to require the protection of an unfortunate owner against too hasty or radical changes in the character of the property by an ambitious tax buyer, which might amount to appropriation even though the deed proved to be void and the purchaser was without title.

In the instant case, the plaintiff was a foreign corporation with a residence at Chicago, and therefore there was a greater probability of its being ignorant of the existence of delinquent taxes. Defendants became the purchaser of the tax deed on June 27, 1923, without any actual knowledge of the sale on the part of plaintiff. This suit to quiet title was commenced January 9, 1924, within six months and twelve days from the time defendants received their deed. Yet within this brief period defendants are claiming to have instituted litigation to terminate a right of way across the land and ask to be reimbursed to the extent of $1,000. All that defendants offered to prove was that they had commenced this action; it had not been terminated in their favor, or at all. There was no offer to show that it was even likely to terminate favorably to the defendants. For aught that appears it may have been ill-advised litigation with no reasonable hopes of success. Indeed, the grantees apparently held a good deed of conveyance to the right of way. Moreover, there was no proof, nor offer of proof, that the litigation, even though it terminated successfully for the defendants, would enhance the value of the premises to any extent whatever. The showing in this case is too speculative, remote, and uncertain to warrant the assumption that the mere commencement of an action of that character would constitute an enhancement of value, or a betterment to the property involved.

For this reason and because we are of the opinion that under our statute the owner of property is not liable for the

value of improvements or betterments placed upon property by the holder of a void tax deed, the judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 13, 1927.