[Sac. No. 4411. In Bank.—December 23, 1931.]

JAMES C. DOUGERY, Appellant, v. FRANK J. BETTENCOURT et al., Respondents.

Joseph E. Bien, Duard F. Geis and Werner Olds for Appellant.

Sans & Hudson, W. J. Belieu, Hankins & Hankins and Harry C. Bell for Respondents.

THE COURT.—Plaintiff appeals from a judgment quieting the title of defendant Bettencourt to certain real property in Glenn County. Plaintiff's claim of title is based upon a tax deed of J. J. Ossenbriggen, county treasurer of Colusa County, as trustee of the bond fund of reclamation district 2047, within which district the lands involved herein are located. This deed is dated August 12, 1927, and was duly and properly recorded in Glenn County on August 13, 1927. Based upon this deed, plaintiff brought this action to quiet title, naming as party defendants Frank J. Bettencourt, the original owner of the land; David E. Hughes, holder of a mortgage on the property, dated September 3, 1921, which mortgage was given to secure an indebtedness of $8,000; and the Glenn-Colusa Irrigation District. It appears that 80 acres of the 215 acres here involved are located within the boundaries of the irrigation district, and that said district has a claim based upon certain delinquent assessments levied by it against said 80 acres.

The record discloses that reclamation district 2047 was organized in 1920 and embraces within its boundaries lands in both Glenn and Colusa Counties. Subsequent to its formation, and in accordance with the statutory provisions therefor, the district caused an assessment to be levied against all the properties within its boundaries. Bonds were issued and sold, and to meet the interest due thereon, an installment of the assessment was called. Bettencourt failed to pay this installment and, as a result of his delinquency, his property was placed on sale June 29, 1926. No bidders appearing at the time and place noticed for the sale, the county treasurer of Colusa County issued a cer-

tificate of sale to himself, as trustee of the district. Thereafter, upon the expiration of the one-year period of redemption, the trustee, on August 12, 1927, sold the property to plaintiff for the sum of $299.03, and executed and delivered to plaintiff the deed which forms the basis of his claim of title.

The lower court found against the claim of plaintiff, and quieted the title of Bettencourt, subject to the Hughes mortgage, but made its decree subject to Bettencourt's reimbursing the plaintiff in the sum of $299.03, with interest, together with any other sums paid or expended by plaintiff for any additional taxes or assessments against the property. In order to ascertain the amount of any such sums expended by the plaintiff, the court ordered plaintiff to file and serve a statement of the amount of any such sums so expended by him, and then made the $299.03 and any such further expenditures a lien upon the property superior to the Hughes mortgage.

The trial court based its conclusion that plaintiff's tax deed was invalid upon the finding that "there was not recorded in the office of the County Recorder of the County of Glenn, State of California, being the county in which said real property is situate, any duplicate or copy of the Certificate of Sale to the purchaser, as required by the provisions of Section 3480 of the Political Code". The validity of the trial court's conclusion that the tax deed was not recorded as provided by that code section presents the most important question on this appeal.

Before directly discussing that question, brief reference should be made to the statutory procedure provided for the sale of lands within a reclamation district for delinquent assessments. The governing provision is section 3480 of the Political Code. So far as pertinent here, that section provides that at least ninety days before interest on the bonds falls due, the county treasurer shall ascertain the amount necessary to pay interest and principal maturing on such interest date, and shall thereupon cause to be published in a newspaper in the county once a week for two weeks, a notice substantially in the form set forth in the section, to inform the property owners in the district that an installment of the assessment has been called and is payable thirty days from a specified date; and that, if any

portion of the installment is unpaid on that date, the same shall become delinquent and a penalty shall be added; that when any installment shall become delinquent, the treasurer shall publish in a county newspaper once a week for two weeks a notice containing a description of each parcel of land whereon such installment is delinquent, and the amount of the installment, with interest and penalty, and shall also publish a notice that each of the parcels will be sold at a specified time and place at public auction to pay the delinquent installment; that unless said installment is paid before the date so specified, the county treasurer shall sell each parcel so described to the highest bidder, but if no bid is made, the treasurer shall bid in and sell said parcel to himself, as trustee of the bond fund of the district. The statute then provides:

"The treasurer shall execute to each purchaser, including himself as trustee, a certificate of sale, and *shall record a duplicate in the county recorder's office.*"

The section then goes on to state that any interested person may redeem at any time within one year after the date of the sale, but if not so redeemed, the treasurer may (where he has bought the land in as trustee) at any time thereafter sell the land "at public or private sale *with or without notice* to any person paying him the amount for which said parcel was bid in by said treasurer at delinquent sale, with interest. . . . "

It is to be noted that, although the land owners are given a newspaper notice that the installment has been called, and another such notice that the installment is delinquent and that, unless paid, their lands will be sold, there is no provision in the statute for any notice of the fact that their lands have been sold or that the period of redemption has expired or is about to expire, unless the provision in reference to recordation of the certificate of sale be so construed.

 The facts are not in dispute as to what occurred after the treasurer caused the lands to be sold to himself on June 29, 1926. He caused a certificate of sale to be issued to himself as trustee, and, on July 19, 1926, *deposited* a duplicate thereof in the office of the county recorder of Glenn County. The recorder wrote upon it the words "Recorded at request of J. J. Ossenbriggen", together with the time. The instrument was then placed by the recorder in

a desk drawer, and a memorandum of the sale was entered in a book devoted to certificates of "Irrigation District Tax Sales", a book which apparently was not an official book or record of the county. However this may be, there was certainly no recordation of the instrument in the ordinary sense of copying the same into the proper book (*Cady* v. *Purser,* 131 Cal. 552 [82 Am. St. Rep. 391, 63 Pac. 844]), nor was there any proper indexing thereof. (*Central Pac. R. Co.* v. *Droge,* 171 Cal. 32 [151 Pac. 663]; Pol. Code, sec. 4235a.)

■ We turn now to a discussion of the question as to whether the provision of section 3480 of the Political Code, above quoted, requires an actual recording, or whether the *depositing* of the document with the recorder constitutes sufficient compliance with the section. We are of the opinion that the provision in the act requiring the recordation of the certificate of sale was inserted therein for the benefit of the property owner; that it was intended by such recordation to give the owner constructive notice of the date of sale and of the date the period of redemption starts; that, so construed, an *actual recordation* in the sense of copying the document into the proper book is required; that failure to comply with this provision of the statute renders subsequent proceedings, based on the certificate of sale, of no legal effect.

That the above interpretation is the correct one becomes apparent when certain fundamental principles of interpretation applicable to proceedings for the sale of property for delinquent taxes are applied to the section under consideration. ■ Proceedings on tax sales are *in invitum* and a failure strictly to comply with the statutory provisions prescribed as essential to effect a sale of the property renders the sale invalid. (*Hinds* v. *Clark,* 173 Cal. 49 [159 Pac. 153]; *Los Angeles Olive Growers' Association* v. *Pozzi,* 167 Cal. 454 [140 Pac. 581]; *Numitor Gold Min. Co.* v. *Katzer,* 83 Cal. App. 161 [256 Pac. 464].) Once it is determined that a particular step is necessary, the courts are not permitted to speculate as to whether a failure to observe or perform that step does or does not result in injury. (*Sawyer* v. *Berkeley Securities Co.,* 99 Cal. App. 545 [279 Pac. 217].) ■ A failure to comply strictly with the provisions of a statute in reference to notice of

tax sales, renders the sale void, even if the owner has actual knowledge and attempts to waive the defect. This is so because the tax officer gains his right to sell, not from the owner, but from the statute, and the statute is the measure of his power. (*Southern California Bond & Finance Corp.* v. *Mathes,* 206 Cal. 749 [276 Pac. 1013].) ■ In addition to the above principles, it must also be kept in mind that it is the policy of the state to give the delinquent taxpayer every reasonable opportunity, compatible with the rights of the state, to redeem his property. (*Hotchkiss* v. *Hansberger,* 15 Cal. App. 603 [115 Pac. 957].)

■ Interpreted according to the above principles, it is our opinion that section 3480 of the Political Code requires the recordation of the certificate of sale as a jurisdictional step, provided by the legislature, which must be taken in order that the proceedings shall be valid. We are further of the opinion that, reasonably interpreted, the provision was inserted for the benefit of the property owner, and that, in order to accomplish this result, the word "record", found in that section, must be interpreted to mean record according to law, i. e., by copying the instrument into the proper book and indexing as provided by law. That the provision of recordation was, among other things, intended for the benefit of the property owner is apparent from the fact, pointed out above, that the act provides for a published notice of the assessment and of the proposed sale, but there is no provision giving the taxpayer any such notice of the fact that the sale has taken place, or that the period of redemption is about to expire. Although the legislature could doubtless dispense entirely with the certificate of sale and, therefore, could dispense with notice thereof (*McDonough* v. *Cooper,* 179 Cal. 384 [177 Pac. 153]), the fact remains that the legislature has seen fit to provide for such certificate and for its recordation. In several cases, by way of *dicta,* it has been held that the purpose of the certificate of sale and its recordation is to give the owner constructive notice of the sale and of the date the period of redemption will expire. (*Bruschi* v. *Cooper,* 30 Cal. App. 682 [129 Pac. 728, 734]; *Lewis* v. *Tulare Reclamation Dist.,* 56 Cal. App. 52 [204 Pac. 421]; *Hinds* v. *Clark,* 173 Cal. 49 [159 Pac. 153].) We are in accord with the views expressed in those cases.

█ Appellant contends, however, that there was sufficient compliance with the recordation provision by the mere deposit of a duplicate with the county recorder, and that an actual copying into the proper book is not required, citing in this regard section 1170 of the Civil Code. That section provides:

"An instrument is deemed to be recorded when, being duly acknowledged or proved and certified, *it is deposited in the recorder's office with the proper officer*, for record."

We are of the opinion that that section has no application to the recording of instruments which are intended to give third persons constructive notice. In other words, when section 3840 of the Political Code requires the recordation of the certificate of sale and it is determined that the purpose of such recordation is to give the owner constructive notice thereof, section 1170 of the Civil Code has no application. In *Cady* v. *Purser*, 131 Cal. 552 [82 Am. St. Rep. 391, 63 Pac. 844], it was held that in order for a recorded instrument to be constructive notice to subsequent purchasers or mortgagees, the instrument must be actually recorded, and that a mere deposit of the instrument with the recorder is not sufficient. The decision was based on the language of section 1213 of the Civil Code, which provides that "every conveyance of real property acknowledged . . . and recorded as prescribed by law . . . is constructive notice of the contents thereof to subsequent purchasers and mortgagees. . . . " The court properly held that in such a case actual recording was necessary and that a mere deposit of the instrument under section 1170 of the Civil Code was not sufficient. At page 557, the court said:

"For the purpose of complying with a statutory requirement, as in the case of official bonds or certificates of marriage, where the evident purpose of the statute is to make the instrument a matter of public record, or when the recording of an instrument is an essential step in perfecting some right or completing some act of the party, as in the case of a declaration of homestead, or an assignment for the benefit of creditors, the depositing of the instrument in the recorder's office is sufficient; but, when merely making a record of the instrument is not the ultimate purpose of the party, but the recording of the instrument is the means by which his ultimate purpose is to be carried into effect, as when his

purpose is to give notice of his interest in real estate, section 1213 requires not only that the instrument shall be filed with the recorder for record, but that it shall also be 'recorded as prescribed by law'. By this requirement, in order that constructive notice of the contents shall be given to subsequent purchasers and mortgagees, the legislature must have intended something in addition to depositing the instrument in the recorder's office for record, since that had already been provided for in section 1170. ■ The word 'recorded' in ordinary usage signifies copied or transcribed into some permanent book. In Anderson's Law Dictionary the term 'recording' is defined 'copying an instrument into the public records in a book kept for that purpose by or under the superintendence of the officer appointed, therefor'."

We are of the opinion that section 3480 of the Political Code must be interpreted in the same way and for exactly the same reasons. Section 1170 of the Civil Code was never intended to apply to those situations where the recordation of the instrument was intended as constructive notice to third persons. As pointed out in the above quotation, that section applies where recordation is for the purpose of complying with a statutory requirement, where the purpose of the recordation is to make the instrument a matter of public record, or is required to complete some act of the party; but when the purpose of recordation is to give notice to third persons of the interest claimed under the instrument, section 1170 of the Civil Code has no application. In such a case, the term "record" must be given its usual and ordinary meaning, that is, the instrument must be copied into the proper book and indexed as provided by the Political Code.

Appellants strongly rely on *Watkins* v. *Wilhoit*, 104 Cal. 395 [38 Pac. 53]. In that case, a debtor executed a deed to trustees conveying to them all his property for the benefit of creditors. The instrument (which involved real property and, under the code, was required to be recorded) was deposited with the recorder for recordation, but was not transcribed by him into the proper book. Nonconsenting creditors attacked the assignment on the ground that it was not recorded. The court held that the instrument was properly recorded within the meaning of section 1170

of the Civil Code, as far as nonconsenting creditors were concerned, for the reason that the object of the statute in requiring such assignments to be recorded was not to give nonconsenting creditors (who parted with nothing on the faith of the record) constructive notice; but was to make the assignment public and irrevocable. In other words, the recordation provision was not intended for the purpose of giving constructive notice to anyone. The mere deposit of the assignment with the recorder irrevocably fixed the rights of all creditors. Nothing that any consenting or nonconsenting creditor could do could affect the status thus created. In the instant case, we have already held that the provision was intended, among other things, to give constructive notice to the owner.

The mere deposit of the certificate of sale did not operate so as irrevocably to fix the status of the parties. The owner, against whose interests the sale operated, could change the status created by the sale by redemption within one year. If section 1213 of the Civil Code requires actual recordation in order to protect subsequent purchasers and encumbrancers, then section 3480 of the Political Code, being for the protection of the owner and to give him constructive notice of the sale, should be interpreted to give the owner no less protection than that afforded subsequent purchasers and mortgagees. It necessarily follows, therefore, that in the instant case, the instrument not having been recorded as required by section 3480 of the Political Code, all subsequent proceedings based thereon are void as to the owner.

█ Appellant points out that the legislature could hardly have expected strict compliance with the provisions of section 3480 of the Political Code, for the reason that the statute is silent as to what the certificate of sale must contain; as to the county in which it is to be recorded; as to the book in which it shall be recorded, and as to the time of recordation. However, by failing to mention these matters, it cannot be assumed that the legislature intended that the requirement of recordation should be of no legal effect. The question as to what the certificate must contain is not before us on this appeal. In reference to another recordation statute, where the time was not speci-

fied, a reasonable time was implied. (*Wolpert* v. *Gripton,* 213 Cal. 474 [2 Pac. (2d) 767], and cases cited.) Although the statute is silent as to the county in which the instrument must be recorded, that is taken care of by the express provisions of section 1169 of the Civil Code, which provides: "Instruments entitled to be recorded must be recorded by the county recorder of the county in which the real property affected thereby is situated."

Although the statute does not prescribe the book in which the certificate of sale is to be recorded, that matter is covered by the provisions of the Political Code applicable to the duties of recorders. Section 4131, subdivision a, of the Political Code, provides that in a separate book the recorder must record "deeds, grants, transfers and mortgages of real estate". If a certificate of sale such as here involved, does not come within that classification, it certainly does come within the provisions of subdivision n of that section. That subdivision provides that the recorder must record in a separate book "such other writings as are required or permitted by law to be recorded". Section 4132 of the Political Code provides for the keeping of indexes to such book. These points are without merit.

The conclusion that the certificate of sale and all proceedings based thereon are invalid, for the reason that the certificate was not recorded, makes it unnecessary to pass upon the question as to the effect of a valid sale for delinquent reclamation assessments upon prior or subsequent irrigation district liens. That question would become pertinent only in the event the sale here involved were valid.

The last point made by appellant is that the expenditures made by him for taxes should be repaid by Bettencourt as a condition precedent to quieting the latter's title, and that the provision in the judgment merely making these sums a lien upon the property does not adequately protect him. Appellant is undoubtedly correct in this regard. As already pointed out, the court quieted Bettencourt's title subject to reimbursing Dougery for the sum of $299.03, with interest at seven per cent per annum from August 12, 1927, "together with any other sum or sums paid or expended by the said plaintiff in the payment of any additional taxes or assessment against said property

and required to be paid, together with interest thereon from such payment at the rate of 7 per cent per annum . . . and the said sums to be repaid to the said plaintiff, James C. Dougery, by the said defendant, Frank J. Bettencourt, are hereby made and constituted a lien upon the said real property . . . said lien to be superior to the lien of the mortgage of David E. Hughes . . . '' Subsequent to the entering of this judgment, the trial court permitted a hearing to ascertain the amount or amounts, in addition to the $299.03, that had been so expended by the plaintiff. At this hearing, it developed that, although over $1200 in addition to the $299.03 had been expended in the payment of taxes and assessments on the property, said additional sums had been paid by one Culver, who holds a contract to buy the property from plaintiff, in the event good title can be conveyed; that Culver has been and still is in possession of the property; that, under this contract, Culver is to pay all taxes and assessments; that such sums are to be paid by Culver in lieu of rent; that, in the event plaintiff cannot convey good title to Culver, plaintiff is not to reimburse Culver for such sums. The trial court ruled that, inasmuch as plaintiff has not expended these sums and was not liable therefor, he should not be reimbursed in that amount. Appellant in his brief does not attack the *amount* of the award of the trial court—$299.03—but contends that he has not been assured of payment of the award by merely giving him a lien which, while superior to the Hughes mortgage, is subject to various tax liens. It is our opinion that appellant is entitled to be repaid the sum of $299.03 as a condition precedent to quieting Bettencourt's title. Section 3466½ of the Political Code (Stats. 1921, p. 555) provides: ''No sale, certificate or deed, made for a valid delinquent assessment shall be adjudged invalid, without the payment to the purchaser of the land of the amount of the said delinquent assessment, penalties, interest and costs.''

Obviously the giving of a lien on the property is not the payment contemplated by that statute. It is, therefore, ordered that the judgment be modified to provide that the defendant Bettencourt's title to the property is quieted against Dougery upon condition that Bettencourt pay to Dougery, or deposit in court to his credit, the sum of

$299.03, plus interest at seven per cent per annum from August 12, 1927, until the date of payment.

As so modified, the judgment is affirmed.

Rehearing denied.