David **GORE**, Appellant,

v.

George **NEWSOME**, et al., **Appellees**.

No. 91–CV–392.

District of Columbia Court of Appeals.

Argued April 8, 1992.
Decided Aug. 25, 1992.

Richard C. Deering, Washington, D.C., for appellant.

Betty S. Walker, Washington, D.C., for appellees.

John Payton, Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Edward E. Schwab, Asst. Corp. Counsel, Washington, D.C., filed a brief for the District of Columbia.

Before STEADMAN and FARRELL, Associate Judges, and KERN, Senior Judge.

FARRELL, Associate Judge:

On this appeal from a judgment cancelling a tax deed, the issue is whether the rule in this jurisdiction that government authorities must comply strictly with the notice provisions of the District of Columbia tax sale statute and regulations requires that a sale be invalidated because the notices to the delinquent property owners abbreviated their first names rather than spelling them out in accordance with the tax assessor's records. Although we take this occasion to caution the District tax authorities about the risks inherent in deviating from notice in the full names listed in the tax records, we conclude that a categorical rule voiding a tax sale whenever a first name appearing in the records has been abbreviated is neither compelled by nor appropriate under our precedents. We hold that because abbreviations of a type used in this case would not materially affect the accuracy of the notices given or create a substantial danger of misleading property owners as to the intended recipients of the notice, the trial court erred in voiding the tax sale on this ground. We remand, however, for consideration of an additional issue raised by our recent decision in *Malone v. Robinson*, 614 A.2d 33 (D.C.1992).[1]

I.

George O'Berry Newsome and Alma Violet Newsome, appellees, were the record owners of property located at 1140 Morse Street, N.E. When they failed to pay their property taxes for the fiscal year 1983, the District of Columbia sent them a Final Delinquent Real Property Tax Notice, as required by statute. The notice was addressed to "Geo. O. & A.V. Newsome." A list of delinquent tax properties subject to a tax sale was published in the Washington Post on December 17, 1983, and in the Washington Afro–American on December 20, 1983. The published notices listed the Newsomes' property under the description "Newsome, Geo. O. & A.V.," followed by the correct Morse Street address. Appellant David Gore bought the property at a tax sale on January 20, 1984. A certificate of sale was issued to him and a copy filed with the recorder of deeds on February 17, 1984. Near the end of the statutory redemption period, the District government, by certified mail, sent a notice of impending expiration of the redemption period to

---

1. Appellees asserted multiple grounds in the Superior Court for nullifying the tax deed, but have informed us by supplemental memorandum that those grounds have been withdrawn and that there are "no remaining issues in plaintiffs' Summary Judgment Motion below." The court has elected *sua sponte* to remand for consideration of the *Malone* issue.

1140 Morse Street, N.E., this time directed to "Geo' O & ' A V Newsome" (sic). The Post Office returned the notice to the District marked "unclaimed." Because appellees failed to pay back taxes plus interest in the amount of $695.59 by the expiration of the redemption period, January 21, 1986, a deed to the property was issued to appellant Gore on May 10, 1989.

Appellees filed suit to quiet title against the District of Columbia and Gore. Gore requested summary judgment, claiming that because the District had complied with all statutory notice requirements, the tax sale was valid. Appellees filed an opposition and their own motion for summary judgment asserting, among other deficiencies, that the mailed and published notices were inadequate because they did not spell out the first names of appellees.[2] Included with appellees' motion was: a deed of trust to the property listing their names as "George O. Berry Newsome" and "Alma Violet Newsome," documents showing that the Office of the Assessor in the Department of Finance and Revenue listed the ownership of the property under the names "George O. Newsome" and "Alma V. Newsome," and affidavits attesting that neither owner was known by his or her first initials or abbreviated versions of their first names. After a pretrial conference on March 6, 1991, the trial judge entered summary judgment in favor of appellees

> based upon the sole issue and undisputed findings that sending notices and bills addressed to "Geo. O. & A.V. Newsome" and publishing the notice of tax sale with the names "Geo. O. & A.V. Newsome" did not strictly comply with requirements of the law that bills and notices be sent to the owners in their names and that the publication of notices of sale and delinquent tax lists be published in the names of the owners.

## II.

Neither side disputes the general principle that District of Columbia law requires strict compliance with the statutes and regulations governing tax sales of real property. *Keatts v. Robinson,* 544 A.2d 716, 719 (D.C.1988); *Frassetto v. Barry,* 497 A.2d 109, 113–14 (D.C.1985); *Robinson v. Kerwin,* 454 A.2d 1302, 1306 (D.C.1983); *Boddie v. Robinson,* 430 A.2d 519, 522–23 (D.C.1981); *Shenandoah Corp. v. Pringle,* 385 A.2d 748, 749–50 (D.C.1978); *Potomac Bldg. Corp. v. Karkenny,* 364 A.2d 809, 812 (D.C.1976), *cert. denied,* 431 U.S. 921, 97 S.Ct. 2192, 53 L.Ed.2d 234 (1977). The issue here is whether that rule prohibits a deviation, in the form of an abbreviated first name, from the full name of the property owner listed in the District's tax records when the government publishes or mails the required notices during the tax sale process.

The governing statutes and regulations require notification of the property owner at three stages of this process. Before property is sold at a tax sale, the District must mail two notices of tax delinquency to the "record owner." D.C.Code § 47–1302 (1981); 9 DCMR § 314.1 et seq. (1984).[3] The District must also publish a list of delinquent properties that are subject to auction at a tax sale. This list must "contain the name of the owner of the property" and describe the property in question. D.C.Code § 47–1301, implemented by, 9 DCMR §§ 315.1, 315.2 (1984). The District must provide final notification to the landowner thirty days before the two year redemption period expires. This notice must be sent by certified or registered mail to the address of the "record owner" of the property. 9 DCMR 317.3 (1984).

Appellees contend that the notices in this case which, while accurate as to the Newsomes' last name, middle initials, and ad-

2. Appellees did not contend, and do not now, that abbreviation of their middle names affected the validity of the notices. They also did not dispute that 1140 Morse Street, N.E. was their correct address.

3. Because the tax sale at issue took place in 1984, the 1984 version of the District of Colum-

bia Municipal Regulations and the 1981 version of the District of Columbia Code were in effect. The regulations and the code have been updated since, but the 1986 version of the regulations and the 1990 version of the code are substantially the same as the earlier one.

dress, abbreviated Mr. Newsome's first name from "George" to "Geo." and Mrs. Newsome's first name entirely (Alma to "A."), did not comply with the requirement that notice be given to the "record owner" and contain "the name of the owner of the property," thereby invalidating the sale. Neither party has cited (nor have we found) legislative history indicating the degree of exactness the drafters intended the mailed designation of "record owner" to have. Appellees cite common law authority generally for the principle that a person's "name" is not rendered by an abbreviation. BLACK'S LAW DICTIONARY 1023 (6th ed. 1990) sums up this authority as follows:

> A person's "name" consists of one or more Christian or given names and one surname or family name. It is the distinctive characterization in words by which one is known and distinguished from others, and description, or abbreviation, is not the equivalent of a "name."

More persuasive, perhaps, though not cited by appellees, is that in a separate but functionally similar place in the tax sale statute—dealing with the District government's right to "bid off" or purchase property at a tax sale and then enforce its lien after notice to the delinquent taxpayer—the drafters specified that "notice must be given in the name appearing upon the records of the Assessor as the owner of such property." D.C.Code § 47–1313. Since the purpose of § 47–1313 notice obviously parallels the purpose of notice under the provisions governing this case, appellees can plausibly argue that the legislature meant notice to the "record owner" generally to mean notice "given in the name"—the exact name—"appearing upon the records of the Assessor," which in this case would be "George O. Newsome" and "Alma V. Newsome," unabbreviated.

This argument has substance, and it is undoubtedly true that a rule permitting no deviation from the name as it appears in the tax records—under pain of invalidation of a later sale—would eliminate any potential for misunderstanding by persons to whom notice is given. Nevertheless, we are not persuaded that an abbreviation of the record first name must necessarily work to invalidate a notice when the essential accuracy of the notice has not been affected and there is no substantial risk that the owner was misled by it.

The strict compliance rule has been this court's response to claims that conceded but "technical" violations of the statute or regulations should not nullify a sale either because there was "substantial compliance" with the notice requirements or the property owner had actual notice of the proceedings despite the defect. We first applied the rule in *Potomac Bldg. Corp. v. Karkenny, supra,* where the mandatory notice of publication of the delinquent tax list appeared in a newspaper on a single day of the week despite the statutory requirement that it appear "twice a week." The tax purchasers conceded the violation but argued that there had been both substantial compliance and actual notice. We rejected these arguments, emphasizing that "[t]he notice provisions of the statute are subject to strict compliance in order to guard against the deprivation of property without due process of law." 364 A.2d at 812. Similarly, in *Shenandoah Corp. v. Pringle, supra,* the notice of publication appearing in a newspaper on September 19 and 20, 1972, stated that the delinquent tax list *"has been* published ... on September 16 and 23, 1972," 385 A.2d at 749 (emphasis in original), an impossibility as to the latter date. We were "certain that Congress never intended that the publication here in question would satisfy the notice requirement of the statute," *id.* at 749 n. 6, and rejected the tax purchaser's claim of substantial compliance.

We again invalidated a tax sale in *Boddie v. Robinson, supra,* but were careful to eschew over zealous application of the strict compliance rule. In *Boddie* the mailed notice of expiration of the redemption period erroneously listed the quadrant of the property owner's address as "S.W." instead of "N.W.," thus violating the regulatory command that notice be mailed "to the last known address of the property owner as recorded in the real estate assessment records of the District." Upon suit to set aside the tax deed, the defendant-appel-

lee argued that "this acknowledged error should not vitiate the sale because post office procedures corrected the District's mistake." 430 A.2d at 522. We recognized that,

> [a]t least as applied to notice by mail, the Department[ of Finance and Revenue's] duty of strict compliance does not require such literal exactitude that this court must carry mailing regulations to their illogical extreme and invalidate tax sales for any and every error in addressing.

*Id.* at 523. We interpreted the standard, however, "as demanding accuracy of address in all material respects." *Id.* We pointed out that in the District of Columbia "the quadrant designator is a principal component of an address," and that "[a]n error in specifying the quadrant creates a substantial risk of non- or mis-delivery, notwithstanding post office procedures that could result in correction of such mistakes." *Id.*[4] We held, therefore, that "[b]ecause the Department made a *material error* in the quadrant designation on this notice of expiring redemption period, the Department failed to comply strictly with the legal requirement." *Id.* (emphasis added).

Unlike in the above cases, the parties in this case are far from agreeing that abbreviation of the first names of the Newsomes violated the statute and regulation even technically. Appellant and the District of Columbia contend that the terms "record owner" and "name of the owner," as used in the relevant provisions, do not on their face exclude abbreviations, and cite authorities in other contexts for the principle that standard abbreviations (such as "Geo." for

"George") are interchangeable with a person's full name.[5] Appellant contends, in other words, that it would be unreasonable to invalidate his tax deed under a rule of strict compliance when it is uncertain whether the District violated the law at all. We find this reasoning persuasive to the extent that we hold that a notice is not defective so as to invalidate a tax sale merely because the District has deviated from the tax records by abbreviating the owner's first name. Rather, the test is whether the type of abbreviation used materially affects the accuracy of the notice or creates a substantial risk that a record owner will erroneously believe the notice was intended for someone else.

In the related context of misspelled names, use of wrong initials, or similar errors in tax notices, courts have nonetheless upheld the validity of sales where "the misnomer is merely an immaterial variance from the landowner's true name, and is not such as could mislead him...." Annotation, *Effect of Misnomer of Landowner or Delinquent Taxpayer in Notice, Advertisement, etc., of Tax Foreclosure Sale*, 43 A.L.R.2d 967, 969 (1955) (summarizing cases).[6] In a case somewhat like this one, *United States v. Sirico*, 247 F.Supp. 421 (S.D.N.Y.1965), a description in the notice of a federal tax lien filed by the District Director of Internal Revenue referred to one of the taxpayers, Assuntra Sirico, by the initial of her first name (*i.e.*, "A. Sirico") rather than by her full name. The court, per Judge Weinfeld, refused to invalidate the notice, stating: "The mere fact that a full name is not given or that there is an addition, omission or substitution of letters in a name, or even errors, does not, in and of itself, invalidate the notice." *Id.*

---

**4.** We noted that "[t]he post office is fallible, and its delivery procedures are subject to change." *Id.*

**5.** *E.g., Ex parte Elliott,* 542 S.W.2d 863 (Tex. Crim.App.1976) (use of abbreviation on fugitive warrant "not material misnomer"); *Clinton v. Miller,* 124 Mont. 463, 226 P.2d 487 (1951) (deed valid even though first name of transferee was abbreviated).

**6.** In *In re Moskovitz,* 68 Pa.Cmwlth. 29, 447 A.2d 1114, 1115 (1982), for example, the court—construing the law of a "strict compliance" state, *see*

*In re Upset Sale, Tax Claim Bureau v. Auritt,* 2 Pa.Cmwlth. 408, 278 A.2d 172, 175 (1971)—held that a mistake in spelling the last letter of the property owner's name did not invalidate the published notice, stating: "[A]bsolute accuracy in spelling of names in notices published pursuant to [the state's notice statute] is not required when (1) the name, as misspelled, is essentially the same as the name correctly spelled, (2) the misspelled name adequately identifies the owner and (3) the party is not prejudiced by the misspelling."

at 422. Declining to require "absolute perfection in compliance with the statutory requirement for filing the tax lien," the court concluded:

> Upon the facts here presented, it is difficult to understand how one searching the records of the Register's office could have missed the notice of tax lien. Not only was the correct surname of the taxpayer listed, but her residence address corresponded with the premises, which was the subject of the title search.

*Id.*

Without clearer indication that the legislature intended notice to the "record owner" to be given in the exact form in which the name appears in the tax assessor's records, we are unwilling to hold that a first-name abbreviation, without more, renders notice inadequate and a subsequent sale invalid. Were we to so hold we would risk "carry[ing] mailing regulations to their illogical extreme." *Boddie*, 430 A.2d at 523. Rather, *Boddie* instructs us by analogy that a particular abbreviation should not be deemed "material error" and thus void a tax sale unless it "creates a substantial risk of non- or mis-delivery" to the record owner. *Id.* We quickly add, however, that the District should consider, as a prudential matter, whether strict fidelity to the full name appearing in the assessor's records—at least in the critical final notice of expiring redemption period—would not better and more certainly fulfill the constitutionally-required notice as well as the government's own interest in avoiding litigation such as this.

■ Our task remains to determine whether the abbreviations used in this case materially affected the accuracy of the notices or created a substantial risk of misleading an intended recipient. We conclude that they did not. As in *Sirico, supra,* appellees do not dispute the accuracy either of the publication and mailing address or of the surname designation. In addition, Mr. Newsome's designation used a standard abbreviation of his first name and his correct middle initial, and Mrs. Newsome was correctly identified by her first and middle initials. We hold there was no reasonable possibility that appellees or others similarly situated could understand such a notice to be directed to persons other than themselves. Since the notice was not defective in any "material respect[ ]," *Boddie*, the judgment of the trial court voiding the tax deed on this ground cannot be sustained.

### III.

■ Entry of judgment for appellant at this time, however, would be premature. In *Malone v. Robinson, supra,* decided while this appeal was pending, we held that 9 DCMR § 317.3, which requires notice to the property owner by certified or registered mail of the final date of redemption, must be construed to require that when notice is returned by the Post Office marked "unclaimed" and hence the District authorities "know[ ] that the record owner did not receive [the] notice required by the regulation," the District must take reasonable additional action to contact the record owner. *Id.,* 614 A.2d at 38. We did not specify what that "reasonable step" must be, but rather remanded the case to the trial court to consider, in light "of the practicalities and realities of the Department [of Finance and Revenue's] operations," whether the District had complied with 9 DCMR § 317.3 "as interpreted in this opinion." *Id.* at 39, 40.

In the present case, it is clear from the record that the certified letter informing appellees of the date of expiration of the redemption period was returned to the District government marked "unclaimed." We have no knowledge, however, of the circumstances surrounding that occurrence or what additional efforts if any the District made to give notice to appellees. As in *Malone,* therefore, we must remand the case to the trial court "to explore the application of the regulation as interpreted in [*Malone* ]" to the facts of this case.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*