Hattie E. ROSE, Personal Representative of the Estate of James Rose, Appellant/Cross–Appellee,

v.

WELLS FARGO BANK, N.A., as Trustee for Option One Mortgage Loan Trust 1999–B Asset Backed Certificates, Series 1999–B, et al., Appellees/Cross–Appellant.

Nos. 12–CV–451, 12–CV–538.

District of Columbia Court of Appeals.

Argued Feb. 19, 2013.
Decided Aug. 29, 2013.

Daniel S. Roth, Washington, DC, with whom Kurt Berlin was on the brief, for appellant/cross-appellee, Hattie E. Rose.

S. Mohsin Reza, McLean, VA, with whom John C. Lynch, Washington, DC, was on the brief, for appellee/cross-appellant Wells Fargo Bank, N.A.

Jonathan C. Ross, filed a statement for appellees/cross-appellants, Howard Bierman, Jacob Geesing, and Carrie Ward, Substitute Trustees.

Before FISHER and EASTERLY, Associate Judges, and STEADMAN, Senior Judge.

STEADMAN, Senior Judge:

Wells Fargo foreclosed on a dwelling owned by the deceased husband of appellant Hattie E. Rose, the personal representative of his estate. The major issue in this appeal is whether the notice of foreclosure was defective in setting forth Wells Fargo's "address." Although Rose's argument in this regard is hardly frivolous, we conclude that the foreclosure was valid and affirm the trial court's judgment.

I.

In 1999, Rose's husband, James, received a loan from Option One Mortgage

Corporation. As security for the loan, he executed a deed of trust on property located at 414 18th Street, N.E., naming the lender as beneficiary. As the trial court noted, "a series of transactions that are not relevant to any issue in this case" followed, and "Wells Fargo became the holder of the note and the owner of various rights and interests relating to the loan."

At some point, the loan fell into default. On May 5, 2010, appellant Rose received a Notice of Foreclosure on the standard form provided by the District government. The notice stated that it was from Bierman, Geesing, Ward & Wood, LLC (the law firm that was handling the foreclosure proceedings). The notice informed Rose that a foreclosure sale would occur on June 10, 2010. On the line for "Holder of the Note," the notice read: "Wells Fargo Bank, N.A., as Trustee for Option One Mortgage Loan Trust 1999–B Asset Backed Certificates, Series 1999–B; (877) 304–3100 c/o Bierman, Geesing, Ward & Wood, LLC, Suite 200, 4520 East West Highway Bethesda, MD 20814 301–961–6555." The notice also called for a "Person to contact to stop foreclosure sale" and listed "Howard N. Bierman, Esq." at the same address and phone number. (Although the form was not required to, and did not, identify the trustees under the deed of trust, they were in fact at that time appellees Howard Bierman, Jacob Geesing, and Carrie Ward, as substitute trustees.) [1]

Rose took no action to prevent the foreclosure sale, which took place as scheduled on June 10. Appellee 101 Geneva LLC purchased Rose's property at the foreclo-

sure sale. A "Substitute Trustee's Deed," dated August 10, 2010, conveyed the property from the substitute trustees to 101 Geneva, and was recorded on August 27, 2010.

Appellant Rose, as personal representative of her late husband's estate, filed this action in November 2010 seeking to void the foreclosure sale. Rose's various claims were rejected by the Superior Court in an order partially granting motion for judgment on the pleadings in October 2011 and an order granting summary judgment in February 2012.

## II.

■ The laws of the District of Columbia require the preparation and mailing of a notice of foreclosure at least thirty days before any foreclosure sale may take place. D.C.Code § 42–815(b) (2010 Repl.). At the time of the foreclosure this notice was required to be "in such format and contain such information as the Council of the District of Columbia shall by regulation provide." *Id.* The applicable regulation in turn provides that the "holder of a note secured by a deed of trust, mortgage or other security instrument (hereinafter, 'holder'), or the agent of any such holder," must send the notice of foreclosure "on a form to be provided by the Mayor of the District of Columbia and to be available in the Office of the Recorder of Deeds." 9 DCMR § 3100.1. This form, the regulation goes on to require, "shall provide for furnishing ... information concerning the sale," including "[t]he name and address of the holder of the note and his or her telephone number of person to call if owner wishes to stop foreclosure." 9 DCMR § 3100.2(f).[2]

---

**1.** The appellee substitute trustees filed a brief in this appeal joining in, adopting and incorporating by reference the brief of Wells Fargo. Appellee 101 Geneva has taken no part in the appeal. Only Wells Fargo filed a notice of cross-appeal.

**2.** Amendments to the District's foreclosure laws have since significantly expanded the

As set forth above, Wells Fargo listed its "address" as "c/o" that of its agent, the law firm handling the foreclosure. In ordinary parlance, when asked for one's address, one would not normally set forth the address of an agent. Moreover, the regulation speaks in terms of two distinct entities—the holder and the holder's agent. Indeed, where the regulation defines "holder," it does not appear to extend that definition to include the holder's agent. 9 DCMR § 3100.1. As a result, when the regulation refers to only one entity, the holder, it is difficult to read that statement to include the agent by implication. Indeed, elsewhere in the regulation where an action may be taken by either the holder or the holder's agent, both entities are named. *See* 9 DCMR §§ 3100.2(g) (requiring a "certification by the note holder or his or her agent"); 3100.3 (requiring that either the "holder" or "his or her agent" send two copies of the notice to the Recorder of Deeds); 3100.4 (allowing the Recorder of Deeds to send confirmation of the notice's receipt to either "the holder or his or her agent"). Neither the regulation nor the form requires the agent's address at all (unless that address is, as was the case here, also that of the "person to contact to stop [the] foreclosure sale"). Thus, a legitimate question can be raised about whether or not the address of the holder's agent can satisfy a requirement that the notice contain the "address of the holder."

On the other hand, the use of an address "in care of" another is a not uncommon form of address. With an intangible entity such as a corporation, partnership, investment trust, and the like, it is difficult to define with precision exactly what address would suffice for purposes of a notice of foreclosure. Necessarily, such entities must operate through agents. Here, the address of the agent could reasonably be viewed as the address of Wells Fargo for the purposes of this particular transaction. For purposes of communication about the foreclosure, it is indeed the most precise address, as indicated by the information on the "person to contact to stop foreclosure" line. And, as an alternate means of communication, Wells Fargo included its toll-free telephone number in addition to that of the agent. It is true that an address may also serve a significant purpose as a means of further identifying the holder, both for the debtor in challenging the foreclosure and for the government in its supervisory capacity. But there obviously is no suggestion here of any attempt to conceal the nature of or to impede access to the holder. A determination of noncompliance would be technical at best.

Rose, however, invokes our line of cases which have applied a doctrine of strict compliance to defects in the nonjudicial foreclosure process and in the closely analogous situation of tax sales. In *Boddie v. Robinson,* 430 A.2d 519 (D.C.1981), we invalidated a tax sale in which the notice contained the wrong quadrant address (S.W. for N.W.) even though the post office properly delivered the letter. A few years later, we invoked the *Boddie* principle in invalidating a nonjudicial foreclosure where the bank had failed to send the notice by certified mail as the statute required, without regard to whether the owner had actual notice of the upcoming sale. *Independence Fed. Sav. Bank v. Huntley,* 573 A.2d 787 (D.C.1990). And in *Bank–Fund Staff Fed. Credit Union v.*

amount of information that a holder must provide to a homeowner during the foreclosure process, and have, in general, added more steps to the foreclosure process. In addition, the form and content of the notice of the foreclosure is now prescribed by the May-or, rather than the council. *See* D.C.Code §§ 42–815(b)(1)(A), (c)(B)(3) (2012 Supp.). However, the text of the municipal regulation which specifies the content of the notice itself remains unchanged.

*Cuellar,* 639 A.2d 561 (D.C.1994), we invalidated a foreclosure sale which did not set forth the "cure" amount even though the owner apparently in fact was aware of the figure. Thus, we refused in such cases to investigate whether the defect in fact prejudiced the owner.

However, in each of these cases, the defect in question pertained to an essential element of the foreclosure process and the interests that the statute and regulations were designed to protect. The proper giving of notice is a requirement of constitutional dimensions, as is the ability of a debtor to forestall foreclosure by paying a certain amount to cure the default. The provision of the address of the actual holder (versus the address of the holder's agent) pales by comparison to such fundamental defects.

We conclude that in this case, we must be guided by our decision in *Gore v. Newsome,* 614 A.2d 40 (D.C.1992), where we allowed a notice to a homeowner of an impending tax sale to stand despite a similar *de minimis* irregularity. In that case, the notice was sent to a "Geo. O. & A.V. Newsome," an abbreviated reference to the property's owners, George O'Berry Newsome and Alma Violet Newsome. *Id.* at 41. Although we doubted that a deviation from the name listed as the "record owner" of the property complied with the tax sale statute in all respects, we "were careful to eschew over zealous application of the strict compliance rule." *Id.* at 43. Instead, we asked whether the deficiency "affects the accuracy of the notice or creates a substantial risk that a record owner will erroneously believe the notice was intended for someone else." *Id.* at 44.

Similarly, in this context, we think that we must ask whether Wells Fargo's substitution of its agent's address "affects the accuracy of the notice" or creates a substantial risk of misleading the record owner about any of the information contained therein. On these facts, we do not think that Wells Fargo's notice in this case did either. Wells Fargo was accurately identified as the holder of the note. Further, the use of "c/o" simultaneously dispelled any belief that Wells Fargo itself (in some form) could be found at the substitute trustee's address while also clearly indicating the existence of an agency relationship between the substitute trustees and Wells Fargo for the purpose of this transaction. Therefore, the notice provided Rose with the information she needed to take steps to prevent the foreclosure or contact the person handling the foreclosure on Wells Fargo's behalf, while avoiding any misleading impression.[3] Accordingly, we hold that the address used in this case did not invalidate the notice of foreclosure.

### III.

We turn now to a collection of other challenges Rose has raised in this case, which are based on Wells Fargo's failure to comply with two other statutory provisions found in District law. After resolving these challenges, we must also address Rose's Consumer Protection Procedures Act claim, which arises from the same statutory violations.

First, Rose argues that Wells Fargo cannot foreclose on her property because it failed to record its security interest. Central to this discussion are the provisions contained at D.C.Code §§ 47–

---

**3.** We note that, in this case, Wells Fargo's listing of its agents' address appears to have been in "good faith," in so far as the substitute trustees are actually Wells Fargo's agents, and Wells Fargo has not endeavored to use any legal distinction between itself and its agent to its advantage in this proceeding.

On different facts, for example, where a note holder claimed that service of process on an agent listed in its place on the foreclosure notice was insufficient to accomplish service on itself, we might find an effort to gain an advantage over a homeowner and look at the case differently.

1431 to 1433 (2013). These sections contain a requirement that "[w]henever any portion of an instrument, which conveys or provides for the conveyance of equitable title to a real property, is transferred by or on behalf of a party to such instrument to a 3rd party ... the 3rd party shall record ... with the Recorder of Deeds of the District of Columbia a fully-acknowledged instrument, including the lot and square number of the property transferred, evidencing the transfer to himself (or herself or itself as the case may be)." D.C.Code § 47–1431(b).[4] This section was originally put into effect with a law that created a "Residential Real Property Transfer Excise Tax" in 1978, along with minor amendments to the provisions providing for the collection of a recordation tax.[5]

In arguing that Wells Fargo's failure to record its interest prohibits the foreclosure in this case, Rose draws on the strict compliance case law we have already discussed in Part II, *supra*. She argues that Wells Fargo's failure to abide by the mandatory recordation requirements means it has not "strictly complied" with the District's law and therefore, cannot foreclose on her property. We disagree.

■ This court has previously ruled that security interests accompany the transfer of a note, even when no "formal assignment" has taken place. *Smith v. Wells Fargo Bank*, 991 A.2d 20, 30 n. 19 (D.C.2010). And, as the trial court noted, District law generally provides that "[t]ransfer of an instrument ... vests in the transferee any right of the transferor to enforce the instrument." D.C.Code § 28:3–203(b) (2013). Thus, a holding that failure to record an instrument precludes foreclosure would conflict with these background legal principles. We do not think the mandatory recordation requirement itself compels such a result. Generally speaking, the recordation process is designed to protect a property interest against subsequent bona fide purchasers, the risk a property holder takes by failure to record. *Smart v. Nevins*, 298 A.2d 217, 219 (D.C.1972) ("It is fundamental that the purpose of recordation is to protect the rights of bona fide purchasers, creditors, assignees, and others relying upon the indicia of record ownership."). It is not generally intended to otherwise affect property rights, which include the right of holders to foreclose on security interests. *See, e.g., Fitzgerald v. Wynne*, 1 App.D.C. 107, 120–21 (D.C.1893) ("The great object of the statutes in requiring deeds of conveyance to be acknowledged and recorded is to prevent the practice of fraud upon creditors and purchasers; to furnish the means of notice and protection to innocent third parties. It has never been held ... 'that those laws altered any principle of the common law....' "). The recordation requirement described by D.C.Code § 47–1431 was enacted as one component of a larger set of tax-related legislation, and its sole apparent purpose was to facilitate the collection of various taxes.

Most importantly, our strict compliance doctrine only requires compliance with the

---

4. In furtherance of the mandatory recordation requirement, D.C.Code § 47–1432 creates a presumption that "all transfers, as described in § 47–1431, are required to be recorded." Finally, D.C.Code § 47–1433 provides for penalties for the failure to record an instrument. However, pursuant to D.C.Code § 47–1433(c), a "person" who does not record a "security instrument" is exempt from the statutory penalty.

5. *See* D.C.Code §§ 47–1411 to 1421, Editor's notes (2013). Neither the expiration of the transfer excise tax nor later amendments to the District's recordation taxation scheme, located in Title 42 ("Real Property"), *see* D.C.Code § 42–1101 to 1124 (2013), have relocated these mandatory recordation provisions, which remain in their original place in Title 47 ("Taxation, Licensing, Permits, Assessments and Fees").

regulations and statutes governing the process of foreclosure. *See Independence Fed.*, 573 A.2d at 788 (requiring strict compliance with "trust deed foreclosure statutes"). We see no basis for expanding our "strict compliance" doctrine to also require compliance with a recordation requirement designed to ensure the collection of municipal taxes.[6] Accordingly we hold that Wells Fargo's failure to comply with D.C.Code § 47–1431(b) does not affect its ability to foreclose on Rose's property.

■ Next, Rose argues that Wells Fargo failed to comply with D.C.Code § 42–101(a) (2013), which provides that "all powers of attorney executed in accordance with this section shall contain" certain text "on the top of the front page, in bold and capital letters."[7] On this claim, we agree with the trial court's conclusion that Rose

lacked standing to challenge the omission of the statutorily required language from the power of attorney form that delegated authority from Wells Fargo to its agent "because she cites no injury to herself fairly traceable to the violation, and she asserts no interests that fall within the zone of interests to be protected or regulated by the statute in question."[8] *See Grayson v. AT & T Corp.*, 15 A.3d 219, 234–35 (D.C.2011) (en banc) ("[A] plaintiff's complaint [must] fall within the zone of interests protected by the law invoked." (internal quotation marks and citations omitted)); *see also Culhane v. Aurora Loan Servs.*, 708 F.3d 282, 291 (1st Cir. 2013) (mortgagers in non-judicial foreclosure proceedings only have standing to challenge void, but not voidable, assignments by the mortgagee).[9]

6. On these grounds, we can distinguish the mandatory recordation of a security interest from the mandatory recordation of a notice of a tax sale. *See Frassetto v. Barry*, 497 A.2d 109 (D.C.1985). The notice of the tax sale provides information, like "the amount of back taxes owed plus penalties, costs, and interest," that directly relates to the process of foreclosing on a tax lien. *Id.* at 112. The recordation of a security interest does not provide any similar information about a foreclosure which may occur at some point in the future.

7. The required text is contained in the statute and reads as follows:
THIS POWER OF ATTORNEY AUTHORIZES THE PERSON NAMED BELOW AS MY ATTORNEY–IN–FACT TO DO ONE OR MORE OF THE FOLLOWING: TO SELL, LEASE, GRANT, ENCUMBER, RELEASE, OR OTHERWISE CONVEY ANY INTEREST IN MY REAL PROPERTY AND TO EXECUTE DEEDS AND ALL OTHER INSTRUMENTS ON MY BEHALF, UNLESS THIS POWER OF ATTORNEY IS OTHERWISE LIMITED HEREIN TO SPECIFIC REAL PROPERTY.
D.C.Code § 42–101(a) (capitalization in original).

8. Accordingly, we dismiss Wells Fargo's effort to cross-appeal this order in its favor as moot,

rather than dismissing it as unacceptable under D.C.Code § 11–721(b) (2013) (only "a party aggrieved by an order or judgment" may appeal).

9. Relatedly, Rose points out that the Deed of Appointment of Substitute Trustees apparently fails to comply with D.C.Code § 42–101 (2013) because it does not reference a recorded power of attorney empowering American Home to act on Wells Fargo's behalf. *See* D.C.Code § 42–101(a) ("If the power of attorney is recorded prior to the deed executed pursuant to the power of attorney, the deed being executed pursuant to the power of attorney shall include a recording date and instrument number reference of where the original recorded power of attorney is located in the Office of the Recorder of Deeds for the District of Columbia."). It is not clear that Rose raised this claim below, and in any event, it appears to us to be an untimely challenge to a "failure[] in the formal requisites" under D.C.Code §§ 42–403 and 404(a)(1) (2013) (the curable failures include the "omission of an acknowledgement or a defective or improper acknowledgement") for the same reasons given by the trial court in rejecting other challenges to Deed of Appointment that have not been renewed on appeal. *See also Smith, supra,* 991 A.2d at 30 (attorney signing as "agent" rather than as "attor-

Finally, we address Rose's claims under the Consumer Protection Procedures Act (or "CPPA"), codified at D.C.Code § 28–3901 to 3913 (2013). In her complaint, Rose argued that Wells Fargo's various failures to comply with the statutory requirements related to recordation of interests and notices of foreclosure, including the provision of the substitute trustee's address discussed *supra,* constituted "unlawful trade practices" in violation of D.C.Code § 28–3904(e) and (f). Those provisions bar, respectively, misrepresentations and omissions of a "material fact." We agree with the trial court's conclusion on this claim.[10] As we have explained, the use of the agent's address for the holder's did not compromise the notice's validity. Therefore, this use cannot be considered a "material" misrepresentation or omission. *Cf. Grayson, supra,* 15 A.3d at 251 (no

material misrepresentation or omission where consumers were not deprived of product's value and missing information was not relevant to reasonable consumer's purchasing decision). Similarly, Wells Fargo's failure to record its interest did not affect its right to foreclose on the property, and so again we perceive no "material" omission or misrepresentation.[11] In sum, we see no merit to Rose's claims that the trial court erred when it granted judgment on the pleadings to Wells Fargo on the CPPA claims.

However, in closing on this note, we must make one final comment about this case. Close attention to the legal requirements of recordation and what must be contained in different types of notices and instruments could save those in the home lending business (and the court system) from protracted litigation where they are forced to explain away violations of a variety of District statutes and regulations.[12]

---

ney-in-fact" deemed a curable defective or improper acknowledgement). Accordingly we do not dwell on this issue further.

10. As an aside, we feel compelled to make one observation about Wells Fargo's arguments as they relate to this question. In its briefs, Wells Fargo argues that Rose was not "damaged" by any of its allegedly unlawful trade practices, and argues that such "damages" are required before a CPPA claim may be brought. In support of this argument, Wells Fargo relies principally on cases from the federal District Court for the District of Columbia, *see, e.g., Muldrow v. EMC Mortgage Corp.,* 766 F.Supp.2d 230, 234 (D.D.C.2011), which cite our opinion in *Osbourne v. Capital City Mortg. Corp.,* 667 A.2d 1321, 1330 (D.C. 1995). But, in 2000, the District of Columbia Council re-wrote D.C.Code § 28–3905(k)(1), and it no longer contains the language cited in the *Osbourne* decision, which required that the consumer "must have suffer[ed] ... damage as a result of the use or employment ... of [an unlawful] trade practice." *Osbourne,* 667 A.2d at 1330 (internal quotation marks omitted). We dealt with this amendment and its ramifications at length in *Grayson, supra,* 15 A.3d at 236. There, we concluded that, because the amended text did not evince an intent to abrogate "this court's constitutional

standing requirement," "the CPPA does not relieve a plaintiff of the requirement to show a concrete injury-in-fact to himself." *Id.* at 243–44. While we leave for a more appropriate case a fuller exploration of the distinction between "damage" and "injury-in-fact," we remind the parties of the change in statutory text and our subsequent interpretation of it.

11. We do not understand Rose to clearly articulate D.C.Code § 28–3905(k)(1) (2013) as an independent basis for a claim and we therefore do not address that issue. Such a claim would be presented for the first time on appeal, *William J. Davis, Inc. v. Young,* 412 A.2d 1187, 1189 n. 2 (D.C.1980) ("Absent a clear miscarriage of justice, matters not raised at trial in civil litigation may not be raised for the first time on appeal."), and of uncertain merit. *See Grayson,* 15 A.3d at 250–51 (not addressing this question specifically, but rejecting a CPPA complaint on the grounds that it "fails to allege the elements of a legally viable claim" despite a request for statutory damages and an allegation of a violation of District law).

12. Any reading of the extensive discussion in *Gore* will illustrate the difficulty we had in that case of finding no violation, although, to

It is only because none of Wells Fargo's conduct affected the foreclosure process in any material way or appears to have actually harmed Rose in any way whatsoever that we now affirm the trial court's orders dismissing portions of the complaint and granting summary judgment.

*So ordered.*

be sure, it did involve an alleged defect arguably going to the vital question of adequate notice.